We'll start with 24-1061, Vivos Therapeutics v. Ortho-Tain. Mr. Neff. Good morning, Your Honours. May it please the Court, Nathan Neff on behalf of the Appellate Council. With me today is Leslie Stevens, the CEO of Ortho-Tain. Just recently, the Colorado Supreme Court formally adopted Section 586 of the Restatement of Tort Second in the case of Kilmer, Lane & Newman v. BKP, Inc., case decided in 2023. They said that an attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course of, and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding. The Colorado Appellate Court just recently, in 2024, in the case of Krumer v. Donald J. Trump, says that as an absolute privilege, it provides absolute immunity to the speaker, even if the statements are false, defamatory, and made with actual malice. Before you get to recent Colorado cases, have you read the March 4th opinion from this Court in Fureese v. Colorado Technical University? I have not, Your Honour. I'm sorry. Well, what it says, and it's right, is that collateral order doctrine is quite limited, and it did not allow an interlocutory appeal in that case under that order. And that's what you're trying to do here. Before we can get to the merits, we need to resolve whether we can hear the case. Sure. That doesn't mean you lose on the merits. It just means you have to proceed in district court and then appeal at the end. Why don't you address the, there are a couple questions about the application in Colorado of the collateral order doctrine. One is whether it even applies to a claim of absolute immunity for litigation statements. We have precedent on that, but there's been more recent Supreme Court decision that throws cold water on it, I think. But even if that's not the case, we indicated this in the prior appeal, that it's got to be a pure matter of law before us, before we're going to hear a collateral order case. And here, and we don't second guess the district court's fact finding. So if this were, say, a qualified immunity interlocutory appeal, if the judge found some facts or didn't find some facts that are necessary for the legal issue to be resolved, we don't have jurisdiction to review it. I talked a lot. Why don't you respond to what I've been saying? Well, I'm familiar with the Will case and I'm familiar with the Cohen case that birthed the collateral order doctrine. And every case from the Supreme Court that I have read and that we cited in our brief says claims of absolute immunity are subject to immediate appeal under section 1291, absolute immunity. They've never said that with respect to a case between private parties. And their most recent statements about collateral order doctrine require an important public interest, which is not present here. But why don't you address, you have a 10th Circuit precedent on your side, but that's before the most recent collateral order decision by the Supreme Court. But still, with respect to the factual component, you have a, how do you respond to that? Because the judge said, I cannot tell what the facts are, whether there was good faith based on the complaint, which is, I think, a pretty black letter statement. How do we get around that? Well, I believe what the judge said is that he was going to decline to dive into the fact finding endeavor. Because you can't. You can't on a complaint where you have no credibility determinations. You can't look at the response from the other side to see who's telling the truth at that stage. I agree. This question of law is not based upon a credibility determination. It's not based upon the motive of the speaker. I thought good faith was required. I thought that's what the judge said. I can't determine whether these statements were made in good faith. But he said he was going to decline to dive into the fact finding endeavor. The record is ample. It's right there in front of the Court. I mean, I have a variation on that question. You know, what are the, you know, what undisputed facts would allow us to determine as a matter of law that there was good faith in this case? Oh, absolutely. Because I think we're stuck with, I'm going to call to order, though, on that question. And, you know, I think your burden is to persuade us that as a matter of law, good faith's here and, you know, setting aside the collateral order.  What you're really referring to is a comment to the restatement that the policymakers behind it didn't want lawyers prior to initiating suit to defame people when they didn't have any actual real intention of ever pursuing a litigation. No, I know that. I understand the policy. I want to know how we can decide on the complaint. Sure. This is a motion to dismiss state, right? So as a matter of law, it's undisputed that there's good faith here and we can get to the merits. Yes, the complaint attached to at least two of the letters that I authored that are supposed to be considered on their own merits. You don't take the pleader's statements and interpretation of them. And if there's a conflict between the exhibits and the pleading, the exhibit controls. We cited this in the brief. Two of the exhibits in their complaint at law are my letters. Letters from me to a different attorney, from one attorney to a different attorney attaching a draft complaint at law. Now, I don't know how it is that the district court could have assessed the complaint, just the complaint, putting aside what we attached in our motion to dismiss pursuant to authority from this court. Just looking at the complaint, you would have seen that they say the basis for their cause of action is statements made by an attorney to another attorney. Right then and there. But what evidence of a good faith is there? It starts with, it's all here in the record. We'll start with Ms. Stevens' letter. It's in the record at 38. This references Orthotain's awareness of specific conduct. She cites the three specific VIVO's continuing education seminars. There's one that's called Wellness Summit by Dr. Ben Miraglia. There's another called Learn the VIVO System by Dr. Brian Kraft. On specific dates, she indicated that Dr. Kraft was under contract, that Orthotain had not released Dr. Kraft from it, and she cited to the ALANIM Act itself. And I would marry that with the admonition from the Fifth Circuit in Coastal States Marketing versus Hunt. The litigator should not be protected only when he strikes without warning. If litigation is in good faith, a token of that sincerity is a warning that it will be commenced and a possible effort to compromise the dispute. If you look in the record at 127-134, you'll find a copy of Orthotain's April 2018 contract with Dr. Kraft. It's in the record. This is the good faith basis for engaging Benko in the first place. If you look at 135-141, we have the non-disclosure agreement with VIVO founder Kirk Huntsman in the record showing that we have a prior relationship. 320-339, we have Orthotain's business records. This is the children. The children that were treated with Orthotain appliances. We have all of their order of appliance records right here. There's six of them. Six specific children. Isaac, Ali, Ava, Ella, Matthew, and Nicholas. Orthotain appliances treated all of these kids years before VIVO was ever even formed. This is all in the complaint? No, this was attached to our motion to dismiss. It's got to be in the complaint, doesn't it? No, sir. The Tenth Circuit precedent allows when someone makes a general reference to documents that the claim is dependent upon but they don't attach it, the Tenth Circuit precedent allows the motion to dismiss to attach those undisputed documents to clarify the court. We were familiar with our spring of 2020 communications. We didn't do anything unlawful. We engaged another person to pursue a legal claim. So we were happy just to put them right before the court so the matter could be determined early on. And if you look at these documents that show Orthotain appliances treated these kids and you compare them with what is also in the record, which is this advertisement that said the VIVO system was going to be on February 7, 2020, and then these photographs showing Dr. Kraft presenting the same six kids that were treated with Orthotain appliances right here, and there's a big name VIVO superimposed across every one of these pictures to create the false impression that VIVO was responsible for the favorable outcomes achieved here. Let me back up a minute. Because you may be absolutely right that the evidence should have required the district court to make a finding one way or the other. That's not something we can review under a collateral order doctrine. This comes before us much more often in qualified immunity context, and the Supreme Court's made it clear in that context, and we have indicated, well, in our prior decision in this case, that we would apply the same standard for this immunity question, that we do not sit here to say you should have granted summary judgment or whatever based on the facts. You made a mistake in your review of the facts. That's not something we can review. I understand that. You asked me what evidence was there in the record for good faith, serious contemplation of litigation, and I'm laying it out for you. This is what we had before this letter ever goes out. But now I'm asking the jurisdictional question.  Why can we review and say, Judge, there was plenty of evidence here of good faith. In fact, it was indisputable. You should have found that there was good faith. The reason you can review this particular case is because it falls within that narrow class of cases that includes denials of substantial claims of absolute immunity. There's not a subspecies of absolute immunity that's only applicable to maybe a public official, not a private party. It's not like one gets the benefit of interlocutory appeal under 1291 because they're a public official. Yes, well, you may say that, but I think you're probably wrong. I mean, do you have a case involving private parties? Sure. We cited two in the brief. I don't know, after the Supreme Court decision? Yes. That talks about there's a public interest involved? Yes. You're familiar with the test for collateral order review, that there's got to be a substantial public interest? Yes. You are? I am, sir. What's the substantial public interest? A variety of them. Access to government, integrity of the system, access to counsel, first-minute right to petition. You might want to look at our opinion from earlier this month and see if it fits that. Well, I can tell you that we also have Fifth Circuit. We cited both those cases, Bonk Pass and Shanks, that both came up in the context of the litigation privilege and granted interlocutory appeal under 1291. We cited both of those cases in our supplemental brief. There's authority. The question is whether it's good anymore. Even if it is, are you disputing that if there's a factual issue that was on which the district court made an error, that we can review that? Because what you're saying essentially, as I'm understanding it now is, there was all this indisputable evidence of good faith, yet the district court didn't find good faith. That's not the sort of thing that can be reviewed on collateral order, Dr. The district court did not look at the documents. There is a tradition that instructs that opinions must not only provide the rationale for the result, but must also summarize the losing party's arguments. Because losing party's arguments are likely to rely upon prior decisions that are inconsistent. In this situation, we cited all of this, all of this documents, in our briefs to the district court, as well as our complaint at law. A couple things, if I could, on the will front. Even Vivos, in their brief, says they're not aware of will abrogating any doctrine. Even my opponents here didn't say that will abrogated the doctrine. In this situation, we then also have a complaint at law. This complaint at law is patently not frivolous. We know it's not frivolous. It was filed. Vivos knows it's not frivolous. They never filed a Rule 11 motion. It survived two Rule 12b6 motions to dismiss. The complaint at law is, and it was at all times, well-grounded in law and fact. That combination, with the fact that I sent a draft complaint that has the same allegations, my retention, the whole time I'm doing it, from April to June, all I'm doing is advocating. I'm providing contracts, photographs, videos, proof that we have a non-compete clause, proof that these are orthotain treated children. We're trying to substantiate our claim. We're at settlement conferences. We're trying to get a corrective order. A draft complaint filed by— I'm so sorry, but what I'm saying has nothing to do with the merits of your privilege argument. It's whether this court can hear that issue at this point in the proceedings, just so you're clear about that. I do understand. I hope I answered the question. I know you can. It's an absolute immunity defense. Thank you for your time. I appreciate it. May it please the Court, Counsel. My name is Brenna Fisher, arguing on behalf of Apoly Fivos Therapeutics. Judge Hart, I'd like to circle back to what your last point was, and you're absolutely right. The merits of this case are not at issue right now. This court does not have appellate jurisdiction to hear this claim. This court recognized in its opinion not two weeks ago, in Universal Technical Institute, that there is a category of claims that are allowed to be heard on collateral order jurisdiction regarding absolute immunity. But the court must look at the entire category to which the claim belongs. And the court is not concerned with the mere avoidance of trial for any absolute immunity or litigation privilege claim. The court is concerned with, quote, avoidance of a trial that would imperil a substantial public interest that counts when asking whether an order is effectively unreviewable under the cone factors. The collateral order doctrine on its face requires that for a non-final order to be immediately appealable, it must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from the final judgment. Even if this court chooses not to reach the absolute immunity issue here, we don't believe that this appeal has even met the three basic tenets of the collateral order doctrine. The district court's order here was not final. The district court left open the possibility that immunity may apply later on based on facts that come through in discovery. The district court's order here was not separate from the merits of the action. Defamatory statements are at the center of this dispute, as are counsel's good faith in making those statements. That's a factual issue. And finally, the district court's order here is not separate from the merits of the action. Oh, excuse me. The district court's order is not effectively unreviewable. The district court will assess factual issues as they arise on the litigation privilege, and this court will have the opportunity to review the district court's factual findings on appeal once litigation has fully concluded in the district court. In its order, the district court only said that it wasn't going to rule at this time on the litigation privilege issue. Turning to the absolute immunity at issue, we don't believe there is any legal support for the extreme relief that appellant is seeking. No case cited by appellant has ever found that a dispute between two private parties rises to the level of absolute immunity. In playing out the scenario that appellant requests, appellant would have the district court make a factual finding on litigation privilege, requiring a mini-trial on that specific issue before a trial on the merits. Sometimes in the qualified immunity context, granted we defer to the district court's fact-finding or determination that facts are necessary, but sometimes the record is irrefutable, basically as a matter of law. There's no disputed facts about an issue, and I understand that's basically Mr. Neff's argument here. But is there really a true disputed fact about the good faith interaction between the parties? Yes. We do believe there are cases where there is no dispute in the record and it can be determined at this stage whether or not there's a dispute of facts. Here, we do believe there's an issue of good faith. What is it? Appellant was saying, I'm privileged to defame in letters sent before litigation. This is not an issue where appellant was making statements in court pleadings, which is what the litigation privilege was meant to protect. This is a statement where he was sending letters before formal litigation had commenced. Don't the cases cover pre-litigation conduct? Not in the litigation. The attorney immunity. For attorney-client litigation privilege. There are cases where it can cover litigation privilege, but we believe that would be a disputed fact in this case, whether or not his statements were made in good faith pre-litigation. We don't believe that there's enough on the record at this point for the district court to determine whether litigation privilege applies. What were the elements of this good faith that we're talking about? Good faith about what? Good faith about making the statements that were considered defamatory by the attorney, whether those statements were made in good faith or not. Well, is it in good faith attempt to resolve possible litigation? Is there any – is it just whether they believed it? Is that the only issue regarding good faith, or does it have something to do with the reason why you're making the statements? Yes, that's exactly right. It's that you're making the statements in anticipation or during the course of litigation. The letters at issue here were appellants saying we're privileged to defame and then listing off defamatory statements, and that's what the issue is here, and that's what the district court deferred ruling on. Well, when you said we're privileged to defame, presumably he said because of the litigation privilege and we're going to sue you. He – Or we're anticipating the litigation. It was not quite that clear cut. But yes, I mean, in his mind it could have been in the anticipation of litigation, but we don't believe – we believe that that's a fact issue for the district court to decide at the first instance. Appellant is trying to make this court into the fact finder of that issue on appeal, and we believe that the district court should have the opportunity to rule on it first before it comes before this panel. Well, that's usually the case, but as Judge Timkovich pointed out – I'm sorry. That's the general rule, but as Judge Timkovich pointed out, there's got to be a real dispute of fact. We will review what would ordinarily be a factual determination by the district court if the record is so clear that we can resolve the factual issue. Even if there is a dispute of fact, I'd like to circle back – You don't want to pursue that? I think it's important that you address whether there really is some question about the attorney's good faith. Wasn't it clear that there was going to be litigation, or was it? We don't believe that it was clear, no, at that point. At that point, it was just two companies sending letters back and forth discussing allegedly defamatory conduct. How much later – how long after those letters was the litigation commenced? Your Honor, I'd need to pull it up if you want me to give it a minute, but I believe it was about six months to eight months afterwards. Well, it's been a long time since I've been a real lawyer, but I remember writing letters pre-litigation with plausible claims in an effort to settle before the judicial process. I'm just trying to see what the fact-finding here is going to look like. Are you going to depose Mr. Neff? I'm sure you can depose the CEO, but is the lawyer going to get deposed? Do you get discovery against his communication with his clients? Because maybe there's a smoking gun. We have a frivolous claim, but we're going to do the same thing. What's this fact-finding going to consist of? I think our next steps would be to move forward. We would plan to depose Mr. Neff because his statements are directly at issue, and we would address those privilege issues with the court at the time. We are interested in determining whether or not he made those statements. Again, spouting out, I'm privileged to defame. As you mentioned, you've written litigation – or, excuse me, demand letters. That kind of language usually doesn't come in a demand letter from an attorney. They're not usually using it as a sword, saying they are privileged to defame, and then coming here and saying, no, no, no, we can't be held liable. The district court shouldn't even be able to question that we use this language in letters. When you said we're privileged to defame and these are the things we've said or we're saying, was that used outside of the litigation context in any way? Were those statements in the letter publicized in some way outside of the litigation? No, they were sent between the parties. Okay, and that wasn't released in any – I would think maybe you'd have a claim of bad faith. I don't know that you would. If the attorney, knowing he has the privilege to say this in a letter to a proposing counsel, writes defamatory material and then publicizes this dispute and those allegations. But that's not what happened here. No, Your Honor. It was not published outside, but his client was working to push this defamatory material, and when our client asked them to cease, he said, you know, I'm privileged to defame. I don't have to listen to you. I don't have to stop. And that's not how the litigation privilege is intended to work. Well, you know, I guess the privilege, whether it's an immunity or affirmative defense, has existed in the common law for hundreds of years. It's embodied in the – I mean, is there not any case law that would help answer my question of how the good faith issue is resolved? Your Honor, I don't have that on hand. I'd love to see a case where an appellate court says the district court should cross-examine, you know, there should be a mini-trial with the lawyers and their clients getting on the stand and talking about their conduct. Well, Your Honor, it's not been said in quite those terms. But Colorado appellate courts have consistently evaluated the issue of litigation privilege at the summary's judgment stage, which indicates that there needs to be factual findings on the record. And the district court evaluates those factual findings as a whole when it has the benefits of a developed factual record, not here at a premature motion to dismiss. Whose burden is it to show good faith? Is it the person asserting the immunity or is it, you know, you resisting the immunity? If you – we believe that it would be appellant's burden if he's claiming litigation privilege to show that his statements were made in good faith. So this started because your client claimed the opposing party had defamed him. Is that right? Yes. So there were statements before. But they're not claiming litigation privilege with respect to those statements before the letters, are they? Are they claiming that those prior statements were made in anticipation of litigation? No, Your Honor. It's starting with the letters. So this would not resolve the case. It would just keep out some of the evidence. Exactly, Your Honor. I think that's an important point here is that no matter what this court decides, this case is going back for full litigation in the district court. It kicks out some of the evidence, but it doesn't kick out any of the substantive claims or any large part of what we're about to litigate. And, again, I'd just like to make the final point. We do not believe that this court has jurisdiction. We believe that litigation privilege under Colorado law, based on the practical way the Colorado courts have been treating litigation privilege, is a defense to liability. We believe that the district court should be allowed to determine whether litigation applies here and whether there was good faith with a developed factual record. And as the district court said, it would defer that ruling for a later time. And as this court noted two weeks ago in the Colorado Technical University opinion, there needs to be a substantial public interest at stake for this court to take on the collateral order doctrine. Appellant has not pointed to any substantial public interest. We have a precedent to the contrary, though, with respect to this privilege. We'd have to overrule a 10th Circuit precedent to find that there's not collateral order jurisdiction to consider the litigation privilege, wouldn't we? We don't believe so, Your Honor. We believe that Colorado Universal Technical Institute set out the standard very clearly two weeks ago. But that didn't involve litigation privilege, did it? No, it did not involve litigation privilege. But we believe that based on the substantial public interest standard, we believe that litigation privilege in a dispute between two private parties, as we have here, that there was no substantial public interest implicated. And so based on this court's prior reasoning and the Supreme Court's line of narrowing the collateral order doctrine. We have a specific 10th Circuit case allowing interlocutory review under the collateral order doctrine of a litigation privilege, don't we? There is, but it was not a litigation privilege between private parties, Your Honor. And that's where we believe that the distinction is. Let me explore that. I mean, it seems to me that there is a strong argument for a substantial public interest in cases like this. And the common law and the restatement recognize that allowing litigants to freely discuss the merits and demerits of a case and try to settle cases before the judicial process is invoked, that seems to me a very important private interest. You don't want parties not to be able to candidly discuss a case pre-litigation. And, you know, I think that's, to me, that sounds as important a public interest as resolving qualified immunity claims against government officials prior to litigation. I'm not quite sure why there should be that much of a distinction. But anyway, why is there not a strong public interest here? We believe that... Just because they're private parties. Just because they're private parties. If you look at the line of cases in the Supreme Court and in the Tenth Circuit, the cases where there has been a substantial public interest involve the government. They involve separation of powers. It involves important issues that are bigger than a defamation claim between two private parties. And switching from federal law to state law, if you look at the Colorado cases, again, litigation privilege can be decided without needing to cut it off at the motion-to-dismiss stage. Even though they're private parties, ultimately what happens here is the invocation of the judicial process. So they're in court, and maybe a flip way to say it is the process is the punishment. And if you can't avoid court for these legitimate interests, there is a substantial government issue at play here because we've got judges and three judges here in a district court proceeding. It seems to me that that's government-adjacent if it's not directly involving government. It could be considered government-adjacent. And I see my time is about finished. May I answer your question? Please. We do see how it would be considered government-adjacent. But the right to avoid trial and the right to avoid the process that is the punishment, as you point out, this court just said in Universal Technical University that the right to avoid trial is not enough. It has to implicate that substantial public interest. And Appellant has not cited any cases where litigation privilege between two private parties would reach that substantial public interest. Even though it could be argued that the dispute in the judicial system as a whole is the substantial public interest, that's just not in line with the cases that have been coming from this court and from the Supreme Court. The Supreme Court has been emphatically narrowing the margins of the collateral order doctrine using the substantial public interest for the past several decades. Thank you. Thank you. Your time is up, but I'm going to give you 30 seconds. I apologize. I thought I asked for three minutes of rebuttal. That comes out of your 15 minutes. I'm going to do 30 seconds. I'm going to talk fast. Okay, good. We did cite a case, Black v. Dixie Consumer, Sixth Circuit, 2016. After the Will case involves private parties, involves the litigation privilege, involves a 1291 interlocutory appeal. It's a denial of an absolute immunity. Horowitz, this case in Horowitz, this court in Horowitz says that absolute immunity entitles its possessor to not even have to answer the complaint. Nothing, not to do depositions, answering complaints, discovery. The whole purpose of absolute immunity is to be spared those burdens. There is a case that deals with the good faith. It was Begley II. It came out in 2020. They cited the Black's Law Dictionary, defining good faith as a state of mind consisting of an honesty of belief or purpose, faithfulness to one's duty or obligation, observance of reasonable commercial standards and fair dealing in a given trade or business, or absence of intent to defraud or seek unconscionable advantage. Can I ask a question? Oh, sure. Well, I mean, just because you say it's in good faith, the cases suggest there is a fact issue lurking in there. And if there is a fact question lurking in there, how do we resolve that? Well, there isn't a dispute of material facts. There isn't one because we submitted the documents. They never disputed them at any point. There's a hypothetical case where there's a real dispute. How are we going to answer the good faith question in a case where it's a real issue? I'm trying to figure out what disputed fact there might be. I'll give you one example that could be. Let's say that they disputed that I was even retained. That would be an example where we might have an issue. Do I fit within the parameters of the 586 analysis? Are you a counsel? Is this a matter that you're involved in? We saw this recently with Krumer, Donald Trump, Rudy Giuliani. He's yelling from the rooftop, but he's not even counsel of record. And they said, we're not going to extend the privilege there because you weren't counsel. They didn't have a problem with the good faith or that they had prospective litigation. They said he wasn't counsel. That would be an example where we might have. But that's really not so much a dispute. Please, please, please. I gave you 30 seconds. We've got a minute and a half. Judge Timkovich asked a question. I just want you to focus precisely on things. Did you want to follow up anymore?  I've been quoted as saying I have a privilege to defame. Could I read just the whole sentence that I actually said?  It's in the record. It's in the record. Okay. You made your point. We'll read the report. Thank you so much. I appreciate it. Thank you, counsel. Case submitted. Counsel are excused.